IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BRAD MCADAMS                      )
                                  )
              Plaintiff,          )
                                  )
     v.                           )          No. 1:05CV01021
                                  )
AUTOZONE, INC.,                   )
                                  )
              Defendant.          )

MEMORANDUM OPINION

TILLEY, District Judge.

This case arises out of a dispute between Plaintiff Brad McAdams and his former employer AutoZone, Inc. ("AutoZone") over Mr. McAdams' allegations of racial harassment and discriminatory discharge. For the reasons set forth below, AutoZone's Motion for Summary Judgment [Doc. #29] will be GRANTED.

I.

The facts in the light most favorable to the nonmoving party are as follows: Mr. McAdams, an African-American, was employed as a store General Manager for Defendant AutoZone during the period between March 2000 and December 11, 2004. Mr. Steve Howell, a District Manager for AutoZone on occasion called Mr. McAdams names such as, "brother," "homeboy," and "bubba," and told Mr. McAdams that he was "getting ghetto." Mr. McAdams informed Mr. Howell that he did not like these kinds of comments, but Mr. Howell continued to make them. Mr. McAdams did not tell Mr. Howell that he viewed these comments as racial

1

slurs.

In addition, another employee, Mr. Fred Hamler, made racially derogatory comments in Mr. McAdams' presence while he was working at AutoZone. Mr. Hamler said "he was not going to work like a nigger." Mr. McAdams informed Mr. Howell of Mr. Hamler's comments. Mr. Howell would not allow Mr. McAdams to discipline Mr. Hamler and otherwise did not take any action in response to the comments.

On October 15, 2004, Mr. Howell visited the store in which Mr. McAdams served as the manager and noticed that Joshua Guthrie, a management trainee, was wearing a "gray shirt." At AutoZone stores, management employees wear gray shirts while other employees wear red shirts. Mr. Howell gave Mr. McAdams a written warning for allowing Mr. Guthrie to wear a gray shirt before Mr. Howell had officially promoted him to management. Mr. McAdams acknowledged that he should not have allowed Mr. Guthrie to wear a gray shirt until his promotion was official.

One month later, Mr. Howell was conducting another site visit to the AutoZone where Mr. McAdams served as the manager. During this visit, Mr. Howell discovered that Mr. Guthrie, who still had not been promoted to management, had been given keys to the store, a manager's computer password, and the combination to the store safe. An investigation was conducted, and Mr. McAdams was interviewed on November 30, 2004. During that interview, Mr.

2

McAdams acknowledged that he should not have allowed Mr. Guthrie to wear a gray shirt before he had officially been promoted by Mr. Howell. Mr. McAdams also stated that he had given Mr. Guthrie keys to the store, a manager's computer password, and the combination to the safe so that he "could train him to be a responsible and trustworthy manager." [Doc. # 31, ex. 8].

A transcript of Mr. McAdams' November 30 interview was sent to the "AutoZoner Relations" department where Timothy Harrison, an AutoZone attorney, recommended that Mr. McAdams should be terminated for unauthorized disclosure of confidential information and violation of loss prevention policies. [Doc. #39, ex. 8]. Regional Manager Craig Clemens accepted Harrison's Recommendation and made the decision to terminate McAdams. [Doc. #31, ex. I]. On December 11, 2004, Mr. Howell informed Mr. McAdams that he was being discharged from his position as General Manager for breaching the company's confidentiality policies. Mr. McAdams was told he breached AutoZone's confidentiality policies when he gave a management trainee keys to the store, access to the store safe, and provided him with the computer passwords. Mr. McAdams, however, testified in his deposition that he followed the AutoZone training manual in giving these items to a management trainee.

On November 23, 2005, Mr. McAdams filed this action, pro se, alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964. AutoZone filed the instant Motion for Summary Judgment on March 29, 2007. [Doc. # 29].

3

Mr. McAdams was informed of his right to respond to AutoZone's motion by letter dated July 27, 2007. [Doc. # 33]. However, Mr. McAdams has not filed any response to the motion.

II.

Summary judgment is proper only when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Cox v. County of Prince William, 249 F.3d 295, 299 (4th Cir. 2001). An issue is genuine if a reasonable jury, based on the evidence, could find in favor of the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Cox, 249 F.3d at 299. There is no genuine issue of material fact if the non-moving party fails to make a sufficient showing on an essential element of its case as to which it would have the burden of proof at trial. Celotex, 477 U.S. at 322-23. In essence, summary judgment requires a determination of the sufficiency of the evidence, not a weighing of the evidence, and the analysis concerns "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

III.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discharge an employee or discriminate in "compensation, terms, conditions, or

4

privileges of employment" because of race. 42 U.S.C. § 2000e-2(a). In order to prove a claim of race discrimination under Title VII, a plaintiff may provide direct evidence of discrimination, such as "conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision," or, in the absence of such direct evidence, the plaintiff may proceed using circumstantial evidence under the burden-shifting proof scheme established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Taylor v. Virginia Union Univ.,193 F.3d 219, 232 (4th Cir. 1999).

Under McDonnell Douglas, a plaintiff's prima facie case of discrimination creates an inference that the employment action was based on unlawful discrimination. If the plaintiff can establish a prima facie case, the employer must then give a legitimate, nondiscriminatory reason for its action in order to rebut that inference. McDonnell Douglas, 411 U.S. at 802. If the employer presents such a reason, the plaintiff can still prove discrimination by showing that the stated reason is a mere pretext for a decision motivated by discrimination. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000); McDonnell Douglas, 411 U.S. at 804. However, if a plaintiff fails to establish a prima facie case of discrimination or fails to raise a genuine factual dispute concerning the employer's legitimate and non-discriminatory explanation for the alleged discriminatory act, the defendant is entitled to summary judgment. Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir.1995). Mr. McAdams asserts that he was subject to a hostile work

environment and that he was terminated on the basis of his race in violation of Title VII.

A.

In order to state a prima facie hostile work environment claim, the plaintiff must prove that the offending conduct: (1) was unwelcome; (2) was based on a protected status; (3) was sufficiently severe or pervasive to alter the conditions of employment and to create an abusive working atmosphere; and (4) is imputable to the employer. See Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc).

The Supreme Court has stated that only harassment that is so "severe and pervasive" that it alters the conditions of employment and creates an abusive working environment will constitute a violation of Title VII. See Clark County School District v. Breeden, 532 U.S. 268, 270 (2001). In examining whether alleged harassment was sufficiently severe or pervasive, courts consider the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). In addition, the severe and pervasive test contains both subjective and objective elements. Subjectively, the plaintiff must perceive the environment to be hostile, and the allegedly discriminatory conduct must be objectively offensive so that a reasonable person would find the conduct

6

hostile or abusive.   Id. at 21-22.

In this case, Mr. McAdams proffers the following in support of his hostile work environment claim:  Mr. McAdams claims that from 2003 until November 2004, Mr. Howell called him names such as "brother," "homeboy," and "bubba." Mr. McAdams also asserts that Mr. Howell made a comment to him that he was "getting ghetto."  Finally, Mr. McAdams asserts that he was not allowed to discipline a white employee, Fred Hamler, who made a comment that he was "not going to work like a nigger."

The Fourth Circuit has explained that "Title VII was not designed to create a federal remedy for all offensive language and conduct in the workplace." Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 754 (4th Cir. 1996).  Although Mr. McAdams asserts that these statements were made over a two-year period, he has not presented any evidence regarding the frequency of these comments during that time period.  On this record, there is simply insufficient evidence from which a reasonable juror could conclude that Mr. McAdams' work place was "so polluted with [racial] harassment that it altered the terms and conditions of [his] employment."  Anderson v. G.D.C., Inc., 281 F.3d 452, 458-459 (4th Cir. 2002).

The incident involving Mr. Hamler's comment, while certainly inappropriate, appears to be an isolated incident.  The Fourth Circuit has consistently held that infrequent or isolated incidents of inappropriate conduct are not severe or pervasive as a matter of law.  Hopkins v. Baltimore Gas and Elec. Co., 77 F.3d 745, 754

7

(4th Cir.1996) (listing cases). As such, the incident with Mr. Hamler cannot serve as the basis for a hostile work environment claim.

Mr. McAdams has not presented sufficient evidence to support a prima facie hostile work environment claim. AutoZone's Motion for Summary Judgment on the hostile work environment claim under Title VII is GRANTED.

### B.

In addition, Mr. McAdams claims that he was terminated in violation of Title VII because his termination was based on race. To establish a prima facie case of discrimination in the context of discriminatory discharge, Mr. McAdams must show: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) at the time of the adverse employment action, he was performing at a level that met the employer's legitimate job expectations; and (4) the adverse employment action occurred "under circumstances which give rise to an inference of unlawful discrimination." E.E.O.C. v. Sears Roebuck & Co., 243 F.3d 846, 851 (4th Cir. 2001).

Mr. McAdams has satisfied the first two elements of a claim for discriminatory discharge. First, Mr. McAdams has presented evidence that he is African-American. In addition, Mr. McAdams' termination constitutes an adverse employment action.

With respect to the third element of a discriminatory discharge claim, AutoZone asserts that it terminated Mr. McAdams because he violated company

policy. In particular, AutoZone asserts that Mr. McAdams was terminated after he improperly gave keys, a computer password, and safe access to an individual who was a management trainee. In his deposition, Mr. McAdams testified on several occasions that he was conducting management training according to the AutoZone hiring and training manual or handbook. [McAdams Dep. at 73, 145-48, 156]. Specifically, Mr. McAdams testified that he did not "breach confidentiality because I went by the training manual." [McAdams Dep. at 161]. Mr. McAdams also testified that he does not possess a copy of that training manual because he was not allowed to take any AutoZone property with him after his termination. [McAdams Dep. at 41, 74].

AutoZone asserts that Mr. McAdams was properly terminated because his conduct constituted an unauthorized disclosure of confidential information as well as a violation of the AutoZone loss prevention policies. Presumably, the AutoZone training manual would indicate that a management trainee should not be given keys to the store, a manager's computer password, and a safe combination until officially promoted to management. However, AutoZone has not presented a copy of the hiring and training manual to rebut Mr. McAdams' testimony. Therefore, a factual issue exists regarding whether Mr. McAdams was satisfactorily performing his job at the time of his termination.

With respect to the final element of the prima facie case, it is the law of the Fourth Circuit that "Title VII plaintiffs must show that they were replaced by

9

someone outside their protected class" in order to satisfy this fourth prong. <u>Miles</u>

<u>v. Dell, Inc.</u>, 429 F.3d 480, 486 (4th Cir. 2005) (noting that "every other circuit

has held that a Title VII plaintiff does not always have to show replacement outside

the protected class in order to make out a prima facie case").   Although the Fourth

Circuit has recognized exceptions to this general rule, none are applicable in the

instant matter.  <u>See</u> <u>id.</u> at 486, 489.  Nor has evidence been presented from which

a viable argument might be fashioned for the recognition of a new exception.

   In this case, the undisputed evidence in the record demonstrates that Mr.

McAdams, an African-American male, was replaced by an African-American female

as store manager, a decision made by the same person who determined that Mr.

McAdams should be terminated.  Therefore, Mr. McAdams cannot satisfy the

fourth prong of the prima facie case for discriminatory discharge.

   In sum, while Mr. McAdams has presented sufficient evidence to defeat

summary judgment as to the first three elements of the prima facie case, he has

not presented sufficient evidence to establish that he was terminated under

circumstances giving rise to an inference of discrimination.  Therefore, AutoZone's

Motion for Summary Judgment is GRANTED.

IV.

   For the foregoing reasons, AutoZone's Motion for Summary Judgment is

GRANTED, and this matter is DISMISSED.

   This the day of September 17, 2007

10

/s/ N. Carlton Tilley, Jr.　
United States District Judge

11